UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTELLIGENT BUSINESS
INNOVATIONS, LLC,

               Plaintiff,               No. 16-cv-11862

ALLIANCE COMPUTING, INC.,

               Defendant.
_____/

OPINION AND ORDER DENYING DEFENDANT'S MOTION TO
TRANSFER VENUE OR DISMISS THIS CASE AND FINDING AS MOOT MOTION
FOR LEAVE TO FILE.

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on August 29, 2016

PRESENT: Honorable Gerald E. Rosen
                  United States District Judge

I.  INTRODUCTION

This breach of contract action is presently before the Court on the motion filed by Defendant Alliance Computing, Inc. ("Alliance") to (1) dismiss the case due to improper venue or (2) transfer it to the United States District Court for the Middle District of Florida. The motion is based upon a forum-selection clause in an unexecuted written agreement. Plaintiff has responded to Defendant's motion and Defendant has replied.

Having reviewed and considered the parties' briefs, supporting documents, and the entire record of this matter, the Court has determined that oral argument is not necessary.

1

Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II. FACTUAL BACKGROUND

Intelligent Business Innovations, LLC ("IBI") is a Michigan limited liability company headquartered in Port Huron, Michigan. IBI has developed a unique point-of-sale system, known as "GymSwype," that could be used by fitness center owners and their customers to, among other things, provide access to the fitness center, handle payments and other membership features.

In 2014, IBI and Alliance Computing, a software and web development company in Orlando, Florida, entered into an oral agreement for Alliance to build and deliver a set of software applications, including software to operate a kiosk unit used by gym members, related mobile (Android and IOS) applications, an administration application to be used by fitness center owners, and a marketing website (the "GymSwype Project"). IBI and Alliance never executed any formal written contract. Although Alliance provided IBI with a "GymSwype Design Specifications" document in July 2014 which detailed the scope and cost of the Project, no formal written agreement was ever signed by either party.

In the fall of 2014, Alliance provided IBI with a proposed written contract which included many provisions never discussed by the parties, including a forum selection clause requiring disputes to be resolved in Florida. This written "Software Development

Agreement," however, was never executed. Instead, the parties continued to operate pursuant to their oral agreement for Alliance to provide the software application services on an agreed schedule in exchange for payment.

Pursuant to the July 2014 design specifications document, the GymSwype Project was originally scheduled to be completed in eight weeks. According to IBI, timely delivery of the Project was critical because IBI could not launch the GymSwype business until the software applications were ready. However, Alliance did not complete the Project within eight weeks as promised. The parties subsequently agreed to changes to the specifications based on recommendations made by Alliance, and IBI made several payments to Alliance for work completed and costs associated with completion. On February 4, 2015, after significant delays, Alliance agreed to finally complete the Project by March 1, 2015, and agreed to pay $350.00 per day thereafter until the Project was completed. The Project remained ongoing until March 25, 2016, when IBI finally informed Alliance that it would find another developer to complete the GymSwype Project.

On April 7, 2016, IBI brought suit against Alliance in St. Clair County Circuit Court alleging in its Complaint claims of breach of contract (Count I) and unjust enrichment (Count II). Defendant timely removed the case to this Court on May 25, 2016 on diversity of citizenship grounds. The following week, on June 1, 2016, Defendant filed the instant "Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) or

to Dismiss under Fed. R. Civ. P. 12(b)(6)."

The basis of Defendant's Motion is the forum selection clause contained in the never-executed Software Development Agreement ("SDA") proposed by Alliance. Defendant claims that pursuant to the forum selection clause, Plaintiff could only bring this lawsuit in Orange County, Florida.

### III.  DISCUSSION

A.  NEITHER THE SDA NOR ITS TERMS WERE A PART OF THE CONTRACT ENTERED INTO BY THE PARTIES.

It is well-settled that venue may be consented to through a forum-selection clause. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 14 (1985); *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972); *Flagstar Bank, FSB v. Gulfstream Business Bank, Inc.*, 2013 WL 6017977 at *3 (E.D. Mich. Nov. 13, 2013) (citing *Detroit Coke Corp. v. NKK Chemical USA, Inc.*, 794 F. Supp. 214, 218 (E.D. Mich. 1992) ("Where a valid forum-selection clause was entered into by the parties, it should ordinarily be given controlling weight.")  However, the forum-selection clause must be a valid part of the contract for a party's consent to be binding. *Visalus Inc. v. Bohn*, 2013 WL 1759420, at *3 (E.D. Mich. Apr. 24, 2013).

The validity of a contract is determined by the laws of the state where the contract is made. *State ex rel. Squire v. Eubank*, 295 Mich. 230, 294 N.W. 166 (Mich. 1940). Under Michigan law, "a contract is deemed to have been made in the State where the last act necessary to make it a binding agreement took place." *Id.*; *see also Visalus Inc.*, 2013

4

WL 1759420, at *3.

The record as presented in this case shows that the parties' contract was formed in Florida. Mutual assent to all essential terms is required for a contract to be binding under Florida law. *See King v. Bray,* 867 So.2d 1224, 1228 (Fla. App. 5th Dist. 2004) (citing *David v. Richman*, 568 So.2d 922, 924 (Fla.1990)). What constitutes the essential terms of a contract is determined by the circumstances of the agreement. *Knowling v. Manavoglu*, 73 So. 3d 301, 303 (Fla. App. 5th Dist. 2011).

According to the sworn affidavit of John Dixon, the sole owner and CEO of Alliance, on September 13, 2014, Rick Quitter and Cory Zieger, the members of Plaintiff IBI, flew to Dixon's home in Orlando, Florida for a meeting during which the parties "finalized" their agreement. [Dixon Aff., Defendant's Reply Br. Ex. 3, ¶ 4]. Dixon also received a down payment of $16,000 at this meeting. *Id.*, ¶ 9. Dixon also gave the members of IBI a copy of the Software Development Agreement (the "SDA") and a document titled "GymSwype Design Specifications," which is Appendix A to the SDA. *Id., ¶ 5.* According to Dixon, the SDA contained the terms and conditions Alliance "generally uses" with its clients, while the design specifications document was "specific to the client's project, and provide[d] terms relating to the scope of work, the cost, and time for completion." *Id*., ¶ 6. It is undisputed that neither Rick Quitter nor Cory Zieger nor John Dixon signed the SDA or any other a formal written agreement at the meeting, and there is no evidence that any of the parties ever read the document during the

meeting.

Based on the documents provided to the Court, the essential terms of the parties' contract were: (1) the time frame for completion of the project; (2) the service to be provided; and (3) the costs of completing the project.

First, the time frame for completion of the project was the primary consideration which led to the agreement between Alliance and IBI. In a February 28, 2015 email sent by Rick Quitter to John Dixon, Quitter stated that IBI "hired [Alliance] because initially you said that you could knock this project out in 6 weeks." [Defendant's Reply Br., Ex. 2]. Time was certainly an essential term of the contract, and it appears the parties agreed to a time frame of eight weeks for completion of the project. Second, both parties admit that Alliance agreed to complete the GymSwype project for IBI. [Dixon Aff., ¶3]. That was the purpose of the agreement. Finally, the parties discussed the price of completing the project, and IBI made a down payment of $16,000. *Id*., ¶ 9. Alliance began performance following the meeting. Id. at ¶ 10.

These essential terms were agreed upon, payment was made and performance began, therefore, a contract was formed between Alliance and IBI. There is no indication that Defendant made acceptance of the terms in the SDA a condition of the contract; indeed, there is no evidence that Plaintiff ever read the SDA. An oral contract was formed between the parties but the forum selection clause in the SDA was not part of the parties' oral contract.

B.  BASED ON THE CONDUCT OF THE PARTIES, THE SDA WAS NOT A REPRESENTATION OF THE CONTRACT THE PARTIES ENTERED INTO.

Throughout the contractual relationship, neither Alliance nor IBI followed the terms of the SDA. Defendant is correct in arguing that courts routinely enforce a forum-selection clause in unsigned agreements where "the parties performed consistent with the terms of that agreement." Defendant's Brief, p. 4 and authorities cited therein. In this case, however, from the formation of the contract until the end of the contractual relationship, the parties here never adhered to the terms of the SDA.

First, the down-payment paid by IBI was not in accordance with the terms of the SDA. The SDA specifies a down payment of $20,000, but only $16,000 was paid to Alliance to begin performance. There is also no evidence of record that the payment schedule set forth in the SDA was followed, at all. Nor did Alliance follow or reference the SDA when requesting or receiving payments from IBI. Neither party made reference to the SDA when the parties decided to amend their agreement, which was also not in accordance with the SDA. Finally, Defendant's repeated insistence that members of Plaintiff sign the SDA is evidence that Defendant did not believe the terms of the SDA were enforceable absent a signed formal written agreement from IBI.

On three separate occasions, after formation of the oral contract and after Alliance began performance, Defendant requested that representatives from Plaintiff sign and return signed copies of the SDA: In January 2015 Dixon even offered IBI a "credit" on

its bill if IBI would return a signed copy of the SDA. [Dixon Aff., ¶ 11.] On February 24, 2015, Dixon again asked for signatures. *Id.* at ¶ 14.Finally, on February 28, 2015, Dixon attempted to make the SDA fully-enforceable by placing a contractual provision in the middle of an email to Plaintiff stating "Any failure to sign the contract will not negate the policies outlined [within it]." *Id.* at ¶ 16 and Aff. Ex. 1-D. Such a statement requires an express acknowledgment or confirmation to be enforceable.

While the law is clear that absent fraud, duress, or mutual mistake, a party who has the capacity to understand a written document and agrees to its terms is bound to the contract, *Ray v. William G. Eurice & Bros.*, 201 Md. 115, 125 (1952), there was no express assent to the terms of the SDA in this case. The acceptance of terms which materially alter the contractual relationship "must be express" and cannot be inferred from Plaintiff continuing with the agreement. *See Eberspaecher N. Am., Inc. v. Van-Rob, Inc.*, 544 F. Supp. 2d 592, 597 (E.D. Mich. 2008) (quoting *Arizona Retail Sys., Inc. v. Software Link, Inc.*, 831 F.Supp. 759, 764 (D. Ariz. 1993) (holding that "assent to proposed modifications [to a contract] must be express and cannot be inferred merely from a party's conduct in continuing with the agreement"). Further, the email containing the contractual statement was titled "GymSwype *Negotiations*." (Emphasis added.) It would be improper to rely on a statement made in negotiations to require enforcement of the forum-selection clause in the SDA. *See Evolution Online Systems, Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 509 (2d Cir. 1998) ("Without a 'clear finding' that

both parties consented to the NDA's forum selection provision, it would be 'premature' for a court to find venue where it would not otherwise lie.").

For all of the foregoing reasons, the Court concludes that the SDA forum-selection clause is not a part of the contract the parties entered into in this case. At best, the SDA presented proposed modifications to the parties' oral contract which were never accepted.

B.  EVEN IF IT WERE A PART OF THE PARTIES' CONTRACT, THE FORUM-SELECTION CLAUSE IS TOO VAGUE TO REQUIRE TRANSFER OF THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA.

The forum-selection clause alone is too vague to warrant a transfer of venue. The burden is on the moving party to prove that transfer of venue is warranted. *See Viron Int'l Corp. v. David Boland, Inc.*, 237 F. Supp. 2d 812, 815 (W.D. Mich. 2002). The burden is a substantial one. *Smith v. Kypon, Inc.*, 578 F. Supp. 2d 954, 958 (M.D. Tenn. 2008) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

Defendant relies heavily on the validity of the SDA which contains the forum-selection clause in arguing that transfer is warranted. As indicated, the Court has determined that the SDA was not a valid, binding agreement. However, even if the SDA was binding on the parties, the forum-selection clause itself is too vague on its face to require a transfer of venue to the United States District Court for the Middle District of Florida. The clause states:

> This agreement shall be construed and enforced according to the laws of the state of Florida, Orange County, Orlando and any dispute under this Agreement must be brought in this venue and no other.

First, the clause does not actually specify a venue at all. "The laws of the state of Florida, Orange County, Orlando" is not a venue. To the extent that an Orange County, Florida venue is specified, the clause does not give any direction as to the appropriate court or level of court. *See ZPC 2000, Inc. v. SCA Grp., Inc.*, 86 F. Supp. 2d 274, 277 (S.D.N.Y. 2000) ("The NDA's 'Forum Choice' provision refers obliquely to the 'Court of New York' and does not distinguish between state and federal courts, or between districts within the state."); *see also Savin v. CSX Corp.*, 657 F.Supp. 1210, 1215 (S.D.N.Y.1987) ("[F]orum selection clauses will be read as limiting venue to a single district only where the language of the clause explicitly mandates such exclusive venue."); *Credit Alliance Corp. v. Crook*, 567 F.Supp. 1462, 1465 (S.D.N.Y.1983) (refusing to enforce a forum selection clause which "empower[ed] the New York courts to adjudicate this matter [but did not] indicate that New York [was] the exclusive or the only appropriate forum where the case may be heard").

Here, the SDA's forum selection clause does not mention courts at all. The clause is certainly not a mandatory forum-selection clause, as was the case in *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 579 (2013) (involving a forum-selection clause which stated that all disputes "shall be litigated in the Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk Division"). While presumably there are state and federal courts situated in Orlando or Orange County, Florida, no venue is mentioned in

the clause. At most, the forum-selection clause should be read as a choice of law clause specifying the Florida state law applies to the contract.

C.   THE § 1404(a) FACTORS DO NOT FAVOR GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

Absent a valid forum-selection clause, a district court considering a § 1404(a) motion should "weigh the relevant factors and decide whether, on balance a transfer would serve 'the convenience of parties and witnesses'" and otherwise promote "the interests of justice." *Atlantic Marine*, 134 S.Ct. at 581 (quoting 28 U.S.C. § 1404(a)). Under § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

District courts have broad discretion when deciding to grant or deny a motion to transfer venue under § 1404(a). *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989). The factors that guide the decision include: (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000).

In this case, these factors do not tip the balance in favor of one party over the other

11

based on the facts presented. Each party primarily works out of their respective home states -- Alliance in Florida and IBI in Michigan. Witness testimony will come from residents of both states. The evidence is located in both states. Each state has an equal interest in the litigation. The burden placed on Alliance in proceeding in Michigan will be equal to the burden placed on IBI by transferring this action to Florida. All of these factors are at best neutral. The fact that the contract was formed in Florida means that Florida law governs the contract, however, that factor alone is not dispositive in the absence of a valid forum-selection clause. *See Detroit Coke Corp. v. NKK Chemical USA, Inc.*, 794 F. Supp. 214, 219 (E.D. Mich. 1992) (finding the presence of a valid forum-selection clause, in combination with governing state law and the existence of a similar case in the original forum, as grounds for denying a motion to transfer venue). Therefore, the weight afforded to Plaintiff's choice of forum tips the balance in favor of proceeding in this Court. *See In re Ricoh*, 870 F.2d 570 (11th Cir. 1989); *McKee Foods Kingman v. Kellogg Co.*, 474 F. Supp. 2d 934, 936 (E.D. Tenn. 2006) (where forum-selection clause is unenforceable, Plaintiff's choice of forum should be given deference).

      For all of the foregoing reasons, the Court declines to transfer venue of this action to United States District Court for the Middle District of Florida. Therefore, Defendant's Motion to Transfer Venue will be denied.

      The Court also will deny Defendant's alternative Motion to Dismiss this action. While an enforceable forum selection clause may be appropriate grounds for dismissal

under Fed. R. Civ. P. 12(b), *see Security Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 371, 374-76 (6th Cir. 1999), the Supreme Court and the majority of lower courts disfavor dismissal.  *See Atlantic Marine Const. Co.*, 134 S.Ct. at 575; *see also Conte v. Ascension Health*, 2011 WL 4506623, at *1 (E.D. Mich. Sept. 28, 2011) ("[T]he majority of courts transfer the action rather than dismiss it outright.")  Here, Defendant has advanced no basis other than the forum selection clause as the basis for its motion to dismiss and the Court has held that the clause is unenforceable.  Therefore, Defendant's request for dismissal under Fed. R. Civ. P. 12(b)(6) will be denied.

## CONCLUSION

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's "Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) or to Dismiss under Fed. R. Civ. P. 12(b)(6)" **[Dkt. # 3]** is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File a Sur-Reply Brief **[Dkt. # 8]** is denied as MOOT.


s/Gerald E. Rosen
United States District Judge

Dated:  August 29, 2016

13

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 29, 2016, by electronic and/or ordinary mail.

                    s/Julie Owens
                    Case Manager, (313) 234-5135